UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRENDA JOHNSON,

        Plaintiff,

v.

NORFOLK STATE UNIVERSITY,        Case No. 2:22-cv-193

        Defendant.

FILED

DEC 1 2 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## REPORT AND RECOMMENDATION

In this employment discrimination action, Norfolk State University ("Defendant" or "NSU") moved for summary judgment, (ECF No. 33), against Plaintiff Brenda Johnson ("Plaintiff" or "Johnson"). NSU argues the evidence is insufficient to permit a reasonable juror to conclude that Johnson was discriminated against due to her race, or that she engaged in any protected activity under Title VII. See Def.'s Br. Supp. Mot. Summ. J. ("Def.'s Br.") (ECF No. 34, at 7-21). Plaintiff opposed the motion, (ECF No. 48), and Defendant replied and requested a hearing, (ECF No. 51).

Because Johnson repeatedly testified that the treatment she experienced was not related to her race, and her other complaints were unrelated to NSU's employment practices, I conclude Johnson cannot establish a prima facie case of retaliation and failed to

rebut NSU's proffered non-discriminatory reasons for her termination. Accordingly, for the reasons explained in detail below, I recommend the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 33).

## I. <u>BACKGROUND</u>

Brenda Johnson is a black woman who worked for NSU as an Administrative Assistant and Test Proctor from November 12, 2018, to October 20, 2021—the date of her termination. Pl.'s Br. Supp. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Br.") (ECF No. 48-1, at ¶¶ 1, 21). The events relevant to her claim all occurred during her employment at NSU. The court summarizes those events below, relying on the parties' evidence, but viewing any dispute of fact in the light most favorable to Johnson.

## A. Johnson's Complaints at NSU

At the onset of her employment in 2018, Johnson reported to Gladys Bennett, the Director of Testing Services ("Dr. Bennett"). Johnson Dep. (ECF No. 34-2, at 6, 9, 15); Def.'s Br. (ECF No. 34, at ¶ 3). Johnson had a one-year probationary period which concluded in November 2019. Pl.'s Br. (ECF No. 48-1, at ¶ 4). As a result of performance concerns, Dr. Bennett sought to extend Johnson's probationary period, but her request was denied by NSU's Interim Provost, Dr. Zapatero. <u>Id.</u>; Dr. Bennett Dep. (ECF No. 34-10, at 13–14).

2

In 2019, Johnson complained about Dr. Bennett to NSU Administrative Personnel—including the NSU President, NSU human resources, and NSU's Interim Provost. Pl.'s Br. (ECF No. 48-1, at 9). Johnson alleges that she reported Dr. Bennett's "hazing management style, and her discriminatory practices when distributing work, authorizing leave and authorizing the usage of educational benefits." Pl.'s Br. (ECF No. 48-1, at 1) (internal quotation omitted). The following year, in July 2020, Johnson alleges that she complained of continued discrimination, including retaliation, to the EEOC Officer of Institutional Equity and Inclusion and the Interim Provost. Id. Plaintiff also alleges she complained of discrimination she witnessed, and was asked to participate in by NSU, against students at the testing center who wore religious head coverings. Id. at 1–2, 9–10. Specifically, Johnson alleges she complained that Dr. Bennett required students wearing a head covering for a religious purpose, and who wanted to wear their head covering during testing, to sign a "Permission to Wear Head Covering" form. Id. at 1–2; Dr. Bennett Dep. (ECF No. 34-10, at 4–5). Johnson alleges she reported the policy and complained that it discriminated against the students on religious grounds. Pl.'s Br. (ECF No. 48-1, at 1–2).

As a result of her reported complaints, Johnson alleges she experienced retaliation including:

> [B]eing required to use sick leave if she wanted to
> telework; being denied pandemic leave; and being denied
> equipment to perform work from home, such as computer
> software and phone and adverse employment actions
> included but were not limited to receiving poor
> performance evaluations, suspensions, and termination.

Id. at 2. Plaintiff was terminated by NSU on October 20, 2021.

Id.

## B. Johnson's Testimony Regarding Her Allegations of Racial Discrimination

On July 14, 2023, Plaintiff Johnson testified under oath about her allegations of discrimination. Johnson Dep. (ECF No. 34-2); Johnson Dep. (ECF No. 48-3). Johnson testified that Dr. Bennett harassed her and gave her misinformation at work. Johnson Dep. (ECF No. 34-2). But when counsel asked Johnson if Dr. Bennett treated her this way because of her race, Johnson stated she did not "feel like ... my race had anything to do with it." Id. at 15-16. Johnson further stated she never reported discrimination based on her race to NSU personnel. Id. at 16. Instead, Johnson testified that she reported discrimination based on her social class. Id. Plaintiff flatly contradicted the allegation in her Amended Complaint, that she was treated differently than similarly situated white employees. Id. at 61-62; see also Am. Compl. (ECF No. 14). Plaintiff's Amended Complaint includes the allegation that she "complained that she was being discriminated against because other similarly situated white employees were receiving favorable treatment in being allowed to telework without being

4

forced to take sick leave while she was not." Am. Compl. (ECF No. 14, at ¶ 18). In the following paragraph, Plaintiff alleges "[s]imilarly situated white employees were afforded pandemic leave to be used without push back from Plaintiff's supervisor." Id. at ¶ 19. Plaintiff also alleged that similarly situated white employes "were provided the proper equipment" to telework, but she was not. Id. at ¶¶ 21, 22. In fact, as Plaintiff testified "[t]here were no white employees in our department." Johnson Dep. (ECF No. 34-2, at 65). Johnson's testimony leaves no doubt that the allegations in her Amended Complaint related to racial discrimination are unsupported by fact:

> Q: I've asked you several times today and you said you've never complained of being discriminated against on the basis of your race?
>
> A: That's correct.
>                              ***
>
> Q: Did you ever tell anyone at Norfolk State University you felt you were being discriminated against because of your race?
>
> A: Not because of my race.
>                              ***
>
> Q: You never complained to anyone at Norfolk State University about race discrimination?
>
> A: I did not.

Johnson Dep. (ECF No. 34-2, at 16, 60, 67); Def.'s Br. (ECF No. 34, at 10).

C.   **Johnson's Work Performance**

During her time at NSU, Johnson had performance-related issues which began during her one-year probationary period. Def.'s Br. (ECF No. 34, at 20-21).   Johnson's work performance was extensively documented by NSU and included repeated concerns regarding attendance and timeliness.   See generally id.   For example, Johnson's 2018-2019 NSU performance evaluation included that "improvement is needed in the area of attendance, punctuality, ordering and maintaining inventory, reporting and resolving computer operations issues in the Testing Center, and following departmental policies and procedures." Id. at ¶ 10; Def.'s Br. Ex. 12 (ECF No. 34-12, at 14).   Johnson's 2019-2020 performance evaluation included that she was not "taking required steps to ensure that the Testing Center is regularly sanitized in accordance with CDC" COVID-19 pandemic guidelines and "[t]here is a need for improved communications with supervisor and adherence to NSU and departmental policies and procedures." Def.'s Br. Ex. 16 (ECF No. 34-16, at 2, 3).

Johnson does not squarely dispute the recorded performance measures, but argues her poor performance evaluations, suspensions, and termination all resulted from unlawful retaliation. Pl.'s Br. (ECF No. 48-1, at 2).   It is not necessary for the Court to recount the entire history of Johnson's performance record at NSU.   Because, as explained below, the

6

undisputed facts fail to establish that Johnson engaged in protected activity that could be viewed as the "but for" cause of any adverse employment action she allegedly suffered.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'  A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-25.  When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for

trial.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods.. Inc., 530 U.S. 133, 150 (2000).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III. ANALYSIS

### 1.   Plaintiff Has Not Demonstrated Any Genuine Disputes of Material Fact.

Plaintiff alleges there are disputed, material facts that preclude granting summary judgment in NSU's favor.  Pl.'s Br. (ECF No. 48-1, at 16).  However, Plaintiff's alleged disputes consist solely of her allegations, with improper citations to the unsworn Complaint.   Citations to the record evidence, including her detailed deposition testimony, contradict rather than support those allegations.  And mere denials "do not constitute a genuine dispute of the material facts asserted." Spellman v. Sch. Bd. Of City of Chesapeake, Virginia, No. 2:12-cv-635, 2019 WL 8062700 at *2 n.1., report and recommendation adopted, 2020 WL 68298 (E.D. Va. Jan. 7, 2020); see also Powell v. Biscuitville Inc., 2020 WL

8

7054241 at *7 (W.D. Va., 2020), affirmed, 2021 WL 2434011 (4th Cir. 2021) ("Mere allegations, denials, speculation, or conjecture are not adequate to satisfy the burden of production demanded by summary judgment."). As explained below, Plaintiff's assertions, without evidentiary support, are insufficient to create a genuine issue of material fact, and thus there are no genuine issues of material fact precluding summary judgment.

The Local Rules for the Eastern District of Virginia require more than citations to the pleadings to support a response brief. Specifically, the response brief must include "a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged in dispute." E.D. Va. Local. R 56(B) (emphasis added). Moreover, "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Id. (emphasis added).

Plaintiff's Opposition to Summary Judgment, (ECF No. 48-1), paragraphs 10, 12-15, 18-19, 21-23, 27, and 28 contain extensive citations to the pleadings in this case, which are insufficient to oppose NSU's properly supported motion for summary judgment. See Anderson, 477 U.S. 1t 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations

or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.") (internal citation and quotation omitted).

Paragraphs 3, 4, 8, and 16 in Plaintiff's Opposition allege facts are "disputed," but fail to cite any evidentiary support. For example, in paragraph 3, "Plaintiff admits that she reported directly to Gladys Bennett, and in February 2021, and it is disputed that Buffy Ruffin ever became her immediate supervisor." Pl.'s Br. (ECF No. 48-1, at ¶ 3).  In the following paragraph, "Plaintiff admits she had a one year probationary period with NSU, but it is disputed that it concluded November 25, 2019, as Plaintiff asserts it concluded on November 12, 2019."  Id. at ¶ 4. Paragraph 8 provides "[i]t is disputed that Plaintiff received a six-month Probationary Review," and finally paragraph 16 states "Plaintiff admits that Bennett issued a Notice of Intent to issue a Group II Written Notice to Plaintiff on February 4, 2021, however, it is materially disputed whether this was retaliatory." Id. at ¶¶ 8, 16.  None of these paragraphs include citations to any deposition, declaration, or exhibit.

Without evidentiary support, Plaintiff's assertions are insufficient to create a genuine dispute of material fact.  See Spellman, 2019 WL 8062700 at *2 n.1; see also Thimons v. PNC Bank, N.A., 254 Fed. Appx. 896, 899 (3d. 2007) (describing that Plaintiff cannot create an issue of fact by denying Defendant's averments

"without producing any supporting evidence of the denials"); and Fuentes v. Perskie, 32 F.3d 759, 764 (explaining Plaintiff cannot "avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations.")

Paragraphs 6, 7, and 13 of Plaintiff's Opposition purport to challenge alleged performance-related issues. Johnson cites the record in each paragraph, but her citations do not support the alleged dispute. For example, responding to NSU's evidence of poor performance, Plaintiff contends:

> It is disputed 'whether she received a Notice of Improvement Needed on March 11, 2019, and it is disputed whether she did receive it at anytime, it is also disputed whether this Notice was a means of harassing Plaintiff and/or in retaliation to her protected activities'. (Johnson dep. 20:9-25, 21:1-25, 22:1-25, 23:1-14)

Pl.'s Br. (ECF No. 48-1, at ¶ 6). Although Plaintiff has cited her deposition to support the alleged dispute, the referenced testimony merely states that she does not "recall the written notice," despite the document containing her signature. Johnson Dep. (ECF No. 34-2, at 23). Johnson does not raise a dispute, but merely cites to her lack of recollection. Plaintiff cites no specific evidence to support her claim that the Notice may have constituted "a means of harassing" her or was given "in retaliation to her protected activities." Pl.'s Br. (ECF No. 48-1, ¶ 6).

Similarly, in Paragraph 7 of Plaintiff's Opposition, she disputes receiving:

11

> [A] Counseling Memorandum on April 30, 2019, and that
> she did receive it at anytime, it is also disputed
> whether this Notice issues as means of harassing
> Plaintiff and/or in retaliation to her protected
> activities. Plaintiff asserts that this document was
> constructed after and because of her protected
> activities. (Johnson dep. 23:15-25, 24:1-7).

Id. at ¶ 7. Again, Plaintiff cites her deposition testimony in which she states—on examining the document with the same date—that she "remember[s] a counseling memorandum." Johnson Dep. (ECF No. 34-2, at 23). This citation does not support any dispute, and she has again failed to support her conclusory allegation that the written discipline constituted harassment or retaliation for engaging in protected activity.

Throughout Plaintiff's Opposition, she cites no contradictory evidence to contest NSU's extensive documentation of poor performance, but repeatedly "disputes" whether certain actions taken by NSU and its staff were retaliatory or done to harass or retaliate against her. Pl.'s Br. (ECF No. 48-1, at ¶¶ 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 26). In each of these instances, she fails to cite any specific evidence in the record that could reasonably create a dispute of fact or suggest that any NSU action was premised on racial animus, or retaliation for engaging in protected activity.

In paragraph 13 of Plaintiff's Opposition, she disputes whether she was provided a Notice of Improvement Needed on November 11, 2020, but admits that the Notice was issued on that date.

Pl.'s Br. (ECF No. 48-1, at ¶ 13). Plaintiff purports to dispute whether the findings and Notice were means to harass or retaliate against her, but as support for these alleged disputes of fact, Plaintiff cites generally to her deposition and Charge of Discrimination. Id. Plaintiff's general citation to her deposition does not direct the court to any discussion of the November 11, 2020 document. See generally Johnson Dep. (ECF No. 34-2); Johnson Dep. (ECF No. 48-3). Further, the Charge of Discrimination, (ECF No. 23-1), includes only her claim that she "received an unfair 2020 performance evaluation." Pl.'s Opp. to Def.'s Mot. Dismiss Ex. 1 (ECF No. 23-1, at 1). Again, without supporting evidence, these allegations are conclusory and do not create a genuine issue of material fact.

This is particularly so in light of Johnson's candid admissions during her sworn testimony that she never believed any of these actions were racially motivated (ECF No. 34-2, at 16, 60, 67); that she never complained to NSU about racial discrimination (ECF No. 34-2, at 60, 67); and that she never identified any similarly situated co-workers from outside her protected class that were treated differently (ECF No. 34-2, at 65). In short, Plaintiff's conclusory statements that she "disputes" whether evaluations of her work were meant to harass are insufficient to create a material issue for trial. And in light of her repeated admissions that her race had nothing to do with her perceived

unfair treatment, NSU's carefully documented motion offers ample bases on which to grant judgment as a matter of law.

Finally, in paragraph 2 of Plaintiff's Opposition, Johnson purports to dispute whether she complained about racial discrimination while employed at NSU by asserting that she did report discrimination and hazing, which—her brief asserts—was racially and culturally motivated. Pl.'s Br. (ECF No. 48-1, at ¶ 2). But as thoroughly documented by her sworn testimony, Johnson candidly acknowledged that she did not report discrimination based on race alone. Johnson Dep. (ECF No. 48-3, at 16, 60, 67, 234). While she argues she did report unlawful discrimination she observed, Plaintiff only cited to her deposition where she indicates she complained to NSU human resources about the Head Covering Permission form, on the basis of race, but "religion mostly." Id. at 234—35; Pl.'s Br. (ECF No. 48-1, at ¶ 2). Moreover, Plaintiff does not allege use of the Permission Form discriminated against her.  Johnson Dep. (ECF No. 48-3, at 235). As described on examination by her own attorney, Plaintiff believes that the Permission Form—which applies to students—resulted in NSU discriminating against students:

> Q: Ms. Johnson, when you complained of discrimination –
> the discriminatory practice of the form itself to HR
> [human resources], it was on the basis that you believed
> that they [students] were being targeted on the basis of
> race as well as religion, correct?

A: Yes.

        ***

A: Well, religion mostly.

Q: Okay. Mostly. But it would involve individuals who were African-American?

A: That's correct.

Id. at 235 (emphasis added).  Plaintiff never states under oath that *she* experienced discrimination based on a Title VII protected category.  Instead, she argues she witnessed, and was required to perpetuate purportedly "mostly" religious discrimination against students at the testing center.  Id.

Even if Plaintiff was correct when she acknowledged her attorney's suggestion that the student Permission Form impacted black students, that fact does not create a material issue for trial.  NSU and Dr. Bennett admit that the Head Covering Permission Form was in place, but argue even if Johnson complained about the Permission Form in the manner she alleges, those complaints concern the treatment of students and thus do not raise a genuine issue of material fact as to whether Johnson complained about an employment practice precluded by Title VII.  Def.'s Reply (ECF No. 49, at 5); Def.'s Br. (ECF No. 34, at 11-12).  I agree.

In Stennis v. Bowie State University, a university employee complained that she was being retaliated against for investigating and reporting her students' concerns that the department chair was discriminating against them based on sex.  716 F. App'x 164, 166-

15

67 (4th Cir. 2017). The Fourth Circuit held that the employee's actions did not constitute protected activity because Title VII does not protect *students* from sex discrimination. Id. at 167. Likewise, here, Johnson's complaints are not that she was retaliated against for opposing a discriminatory employment practice at NSU, but rather that the Permission Form resulted in discrimination against NSU *students*. See Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989) ("[Plaintiff' complains, however, not that he has been retaliated against for investigating discriminatory *employment practices* within the police department, but for investigating instances of racial harassment perpetrated by police officers against members of the community. Such a claim simply is not cognizable under Title VII.") (emphasis in original).

"To find Title VII protection for whistle-blowers on each and every instance of discrimination on the part of the employer is more than we think the plain language of its provisions will support." Id. In light of Fourth Circuit precedent, Johnson's complaints about NSU's treatment of students does not present grounds for an employment discrimination action against her.

## 2. Johnson's Retaliation Claim Must Fail Because Johnson Did Not Engage in Protected Activity.

Johnson contends that NSU retaliated against her after she reported "what she reasonably believed to be unlawful employment

16

actions." Pl.'s Br. (ECF No. 48-1, at 2, 8). Despite her reports, Johnson did not engage in protected activity under Title VII. Accordingly, NSU is entitled to summary judgment on the merits of Johnson's retaliation claim.

Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and Title VII's anti-retaliation provision serves to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); see also 42 U.S.C. § 2000e-3(a).

To survive summary judgment on her retaliation claim, Johnson must demonstrate three elements: (1) that she engaged in protected activity; (2) that her employer took a materially adverse action against her; and (3) that there was a causal link between these two events. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)); Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 825-26 (E.D. Va. 2016) (noting that "a 'materially adverse action,' not 'adverse employment action,' is the proper articulation of the adversity element in retaliation claims"), motion to certify appeal denied, No. 3:15cv569, 2016 U.S. Dist. LEXIS 95049, 2016 WL 3922053 (E.D. Va. July 20, 2016).

17

To prevail on a Title VII retaliation claim, Johnson must show retaliation through direct or circumstantial evidence of retaliatory animus, or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The plaintiff has discretion to choose his or her preferred method of proof. Foster Univ. of Maryland-Eastern Shore, 787 F.3d 243, 249 (4th Cir. 2015). Here, Johnson argues both direct and circumstantial evidence preclude summary judgment.

But, contrary to Johnson's contention, the undisputed facts establish that she did not engage in "multiple protected activities" under Title VII. Pl.'s Br. (ECF No. 48-1, at 8). Plaintiff argues that her reports of discrimination and harassment constitute protected activity. Id. at 9. Plaintiff's alleged protected activity can be divided into two separate categories for analysis: (1) Johnson's personal reports about alleged discriminatory treatment and harassment she experienced; and (2) Johnson's reports concerning the Head Covering Permission Form and treatment toward students at the testing center. I will address each in turn.

Section 704(a) of Title VII's anti-retaliation provision provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice1 by this subchapter, or because he has made a charge,

18

> testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this
> subchapter.

42 U.S.C. § 200e-3)(a). An employee engages in protected activity
when (1) she opposes an unlawful employment practice under Title
VII or (2) "participate[s] in any manner in an investigation,
proceeding, or hearing" under Title VII. Id.; see Netter v.
Barnes, 908 F.3d 932, 937-38 (4th Cir. 2018). The Supreme Court
and the Fourth Circuit have taken "an expansive view of what
constitutes oppositional conduct." DeMasters, 796 F.3d at 417;
see Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,
555 U.S. 271, 276 (2009). An employee engages in protected
activity when she opposes actions that are "actually unlawful under
Title VII" or that she "reasonably believes to be unlawful" under
Title VII. DeMasters, 796 F.3d at 418 (internal quotation marks
omitted).

Considering Johnson's allegations and reports of
discrimination she personally experienced as NSU, she has failed
to demonstrate that she engaged in protected under Title VII. As
explained recently by the Fourth Circuit, "vague mentions of
'retaliation' and harassment' do not suffice as Title VII protected
activity." Johnson v. Global Language Ctr., 2023 WL 3645055, at
*16 (4th Cir. 2023). Here, Johnson complains at NSU consistent
entirely of "vague mentions," including, but not limited to, Dr.
Bennett's "hazing management style, and her discriminatory

practices when distributing work, authorizing leave and authorizing the usage of educational benefits," which do not constitute protected activity under Title VII. <u>Id.</u>; Pl.'s Br. (ECF No. 48-1, at 1) (internal quotation omitted).

Moreover, Johnson has failed to demonstrate that any of these complaints related to an unlawful employment practice under Title VII. During her deposition, Johnson unequivocally stated that she never told anyone at NSU that she felt she was being discriminated against because of her race. Johnson Dep. (ECF No. 34-2, at 16). Johnson also stated she did not believe Dr. Bennett's treatment towards her was related to her race but was instead because she was not "in her social class." <u>Id.</u> at 15-16. Despite contrary allegations in her unsworn Complaint, Johnson testified that she was not treated differently than similarly situated white employees and noted that she did not know "of any white employees" in the testing center. <u>Id.</u> at 62. Johnson not only failed to put forward evidence that she was discriminated against because of her race, but she candidly admitted in her deposition that she does not allege nor believe that she was treated differently because of her race. <u>See id.</u> Absent an objective belief that she was opposing an unlawful employment practice under Title VII, Johnson's vague complaints of discrimination and harassment do not constitute protected activity.

Johnson's reports of the treatment experienced by students at the testing center, also do not constitute protected activity under Title VII. "Title VII is not a general bad acts statute ... and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011). Title VII does not protect reports of religious discrimination against students, and thus Johnson's complaints about the head covering policy in the testing center are outside the scope of its protections.[1]

Protected activity is essential to a successful Title VII retaliation claim. It is the first ingredient in a prima facie showing of unlawful retaliation. Because Johnson cannot establish that she engaged in protected activity, her retaliation claim under Title VII fails.

## IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend that the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 33).

---

[1] For purposes of summary judgment, NSU acknowledges Johnson's sworn testimony that she complained to NSU about the head covering policy—but not that the policy was discriminatory. Def.'s Reply (ECF No. 49, at 8). In conceding her complaints, the University does not suggest that the head covering policy is in fact discriminatory. All head coverings were prohibited in the testing center— and the brief form merely requires those seeking a religious exception to the ban to request one. Dr. Bennett's Dep. (ECF No. 34-10, at 42—58).

## V.   <u>REVIEW PROCEDURE</u>

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, <u>see</u> 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 12, 2023