UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRENDA JOHNSON,

    Plaintiff,

v.                           Civil Action No. 2:22cv193

NORFOLK STATE UNIVERSITY,

    Defendant.

## REPORT AND RECOMMENDATION ON RULE 11 SANCTIONS

Plaintiff's first Complaint in this Title VII action failed to plausibly allege protected activity. The court dismissed it in a written Opinion granting leave to amend. Her second attempt survived Rule 12(b)(6) by including new detailed allegations of racial discrimination, and preferential treatment of similarly situated white employees. But when she was deposed, Plaintiff explicitly repudiated the new facts, many of which the court relied on in permitting discovery. The Defendant, Norfolk State University (NSU), provided her counsel an opportunity to withdraw the Amended Complaint after her deposition, but she and her counsel did not. As a result, NSU moved for summary judgment and for sanctions under Rule 11(c). The sanctions motion was referred to me for a Report and Recommendation along with NSU's properly supported Motion for Summary Judgment.[1]

---

[1] In a separate Report and Recommendation, I concluded that there were no material facts in dispute and that Plaintiff failed to establish that she engaged in any Protected Activity. The sanctions recommended in

1

As explained in detail below, Plaintiff's new factual claims had no evidentiary support even after discovery. Plaintiff knew this, and her attorney should have known it as well. As a result, sanctions under Rule 11(c) are appropriate.

## I. BACKGROUND

Originally filed in 2022, Plaintiff's Complaint alleged one count of retaliation in violation of Title VII. Compl. (ECF No. 1); 42 U.S.C. § 2000e—(a). NSU moved to dismiss the Complaint arguing Plaintiff failed to plausibly allege she engaged in protected activity. (ECF No. 9, at 1, 3-8). The court granted NSU's motion, noting that although Plaintiff "complained of discrimination," she provided "no evidence of the nature of the discrimination." Mem. Order (ECF No. 13, at 6). The opinion explained the allegations were "so sparse" the court could "only guess at the basis for the alleged discrimination," eventually concluding that "the threadbare allegations of discrimination" failed to plausibly allege a claim for relief. Id. at 7.

In her Amended Complaint, Plaintiff's counsel added significant detail to address the shortcomings illuminated by the court's written opinion. Specifically, Plaintiff alleged that she was a member of a protected class, African American, and "she was being discriminated against on the basis of her race," Am. Compl.

---

this report are, of course, contingent on the District Judge adopting the material portions of that recommendation as the opinion of the court.

(ECF No. 14, at ¶¶ 15, 17). She also made the following detailed claims:

- In her July 2020 Complaint, Plaintiff complained she was being discriminated against because other similarly situated white employees were receiving favorable treatment in being allowed to telework without being forced to take sick leave while she was not.

- Similarly situated white employees were afforded pandemic leave to be used without pushback from Plaintiff's supervisor.

- Plaintiff further complained she was denied the appropriate equipment to perform her work from home during the pandemic.

- Similarly situated white employees were provided the proper equipment to perform their job functions.

Am. Comp. (ECF No. 14, at ¶¶ 18-22).

Despite the additional detail, NSU again moved to dismiss the Complaint which was also based on Plaintiff's complaints related to the enforcement of a head covering policy which applied to students in the NSU testing center where Plaintiff worked. The court denied NSU's second motion to dismiss in another written opinion—this time concluding that Plaintiff's allegations were sufficient to plausibly allege a claim for relief. Reviewing the new allegations, which the court was bound to accept as true, the second opinion denying NSU's motion concluded that her complaints "centered on what she perceived as discriminatory conduct, including discrimination based on her race and her supervisor's discriminatory treatment of a population of students." Mem. Order (ECF No. 26, at 4). The court continued:

3

> More specifically, Plaintiff alleged that, <u>unlike her white counterparts</u>, she was forced to take sick leave instead of being authorized to telework, she received pushback or was denied use when requesting to take pandemic leave, and she did not receive the appropriate equipment when the university went remote at the beginning of the COVID-19 pandemic.

<u>Id.</u> (emphasis added) (citing Am. Compl. ¶¶ 18-22). The court went on to explore Plaintiff's allegations regarding her complaints about the allegedly discriminatory student head covering policy to assess whether Plaintiff engaged in any protected activity. Concluding its analysis on this point, the court wrote that, "at the very least, Plaintiff participated in protected activity when she submitted a Complaint in July 2020, reporting the alleged racial discrimination she faced in violation of Title VII." In a footnote, the court observed that it was not necessary to decide the legal issue of whether Plaintiff's complaints about the head covering policy alone were protected activity under Title VII[2] "because it is undisputed that Plaintiff engaged in a form of protected activity when she complained of her own racial discrimination." Mem. Order (ECF No. 26, at 9, fn. 2).

The parties proceeded with discovery and during her deposition NSU examined Plaintiff on the additional factual

---

[2] NSU has argued in each of its dispositive motions that complaints about the head covering policy were not protected activity because they were unrelated to any employment practice. See <u>Stennis v. Bowie State Univ.</u>, 716 F. App'x 164, 166-67 (4th Cir. 2017) (finding no protected activity in employees' complaints about university's alleged gender discrimination against students).

4

allegations the court relied on in sustaining her Amended Complaint and denying NSU's second Motion to Dismiss. She candidly, and without hesitation, disputed all of them.

Reviewing the Amended Complaint's new claims, Johnson testified as follows:

> Q. I've asked you several times today and you said you've never complained of being discriminated against on the basis of your race?
>
> A. That's correct.
>
> Q. So, paragraph 15 is not true?
>
> A. No.
>
> Q. Paragraph 18?
>
> A. 18? I don't recall white employees, because there were no white employees in the testing center.
>
> Q. So, paragraph 18 is not true?
>
> A. No, that's not true. Because I didn't know of any white employees. No, there were no white employees in the testing center.
>
> Q. Paragraph 19 says similarly situated white employees were afforded pandemic leave without pushback from Plaintiff's supervisor.
>
> A. There were no white employees in the testing center.
>
> Q. So, paragraph 19 is not true?
>
> A. That's correct.
>
> Q. The Complaint alleges that in July 2020 you were being denied use of pandemic leave.
>
> A. Oh, that's not correct. Yeah, that should have been 2021, I guess.

5

> Q. So, paragraph 20-22 says similarly situated white employees were provided the proper equipment to perform their job functions.
>
> A. I don't recall. There were no white employees in our department.
>
> Q. So, that is not a true statement.
>
> A. No, I didn't make that statement.

Johnson Dep. 196:13-18, 197:25-198:14, 199:21-25, 200:24-201:5.

In addition to expressly disclaiming the factual allegations in these critical paragraphs, Johnson testified repeatedly under oath that she did not complain of racial discrimination and did not believe she had been discriminated against on the basis of her race.

> Q. Did you ever tell anyone at Norfolk State University you felt you were being discriminated against because of your race?
>
> A. Not because of my race.
>
> \*\*\*
>
> Q. Did you ever tell Mr. Robinson [EEO Officer] that you felt you were being discriminated against because of your race.
>
> A. Not because of my race.
>
> \*\*\*
>
> Q. But at no point did you complain of race discrimination?
>
> A. No.
>
> \*\*\*

6

> Q. You never complained to anyone at Norfolk State University about race discrimination.
>
> A. I did not.

Johnson Dep. 62:4-7, 115:15-18, 194:15-17, 228:12-14.

Johnson's deposition was completed July 14, 2023. Because she repeatedly admitted that critical factual allegations in her Complaint lacked evidentiary support, NSU prepared a draft Motion for Sanctions and brief which it served on Johnson's counsel on July 17, 2023, requesting that Johnson immediately dismiss the Amended Complaint. Mem. Supp. Sanctions Ex. 1 (ECF No. 36-1). The correspondence advised Plaintiff's counsel that NSU would seek sanctions if the Amended Complaint was not dismissed with prejudice within twenty-one days. Id. at 3. Plaintiff did not withdraw the Complaint and NSU moved for summary judgment relying on the factual record set out above.

NSU thereafter moved for sanctions as it advised Plaintiff and her counsel it would. (ECF No. 36). Johnson's counsel filed a brief opposing the sanctions motion. Pl.'s Resp. (ECF No. 47). Plaintiff's brief does not take issue with the factual record, but argues sanctions are inappropriate because the false allegations in Plaintiff's Amended Complaint resulted from a "miscommunication" and were not "intentionally deceptive." Id. at 1-2. Counsel blamed the obvious inconsistencies on his "misinterpretation of Plaintiff's use of language based on a reasonable investigation of Plaintiff's claims."

7

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 11 imposes a duty on attorneys to certify, based on a reasonable inquiry, that any pleading or paper they file with a district court (1) "is not being presented for any improper purpose"; (2) is "warranted by existing law"; and (3) supported by facts that "have evidentiary support." Fed. R. Civ. P. 11(b)(1)-(4). An attorney must conduct a reasonable investigation of the factual and legal basis for his claim before filing. Brubaker v. City of Richmond, 943 F. 2d 1363, 1373 (4th Cir. 1991).

The Fourth Circuit has stated that "in order to determine improper purpose, a district court must judge the conduct of counsel under an objective standard of reasonableness rather than assessing subjective intent." In re Kunstler, 914 F.2d at 518 (4th Cir. 1990)(internal citation omitted). "[I]t is not enough that the injured party subjectively believes that a lawsuit was brought to harass ... instead, such improper purposes must be derived from the motive of the signer in pursuing the suit." Id. at 518-19; see also Williams v. The Estates, LLC, No. 1:19-CV-1076, 2023 U.S. Dist. LEXIS 49160, 2023 WL 2607021, at *7 (M.D.N.C. Mar. 23, 2023) (finding a motion was filed for an improper purpose and thus violated Rule 11(b)(1)). "[W]hether or not a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose." In re

8

Kunstler, 914 F.2d at 518; Caraballo v. Russell, 586 F. App'x 620 (4th Cir. 2013) (affirming the imposition of sanctions under Rule 11 because the district court properly considered the factors outlined in Kunstler, 914 F.2d).

A legal argument fails to satisfy Rule 11(b)(2), and is thus sanctionable, when "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002)) (quoting In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998)) (internal quotation omitted)). Specifically, the court must assess "what was reasonable to believe at the time the pleading ... was filed." Id. at 467 (citing Fed. R. Civ. P. 11 advisory committee's notes). A filing is made for an "improper purpose" if it was filed in bad faith and meant to harass, cause unnecessary delay, or increase the cost of litigation. See In Re Kunstler, 914 F.2d at 518.

"[F]actual allegations fail to satisfy Rule 11(b)(3) when they are unsupported by *any* information obtained prior to filing." Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006) (emphasis in original) (internal quotation omitted). If, after providing notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court may impose sanctions on the party responsible for the violation. Fed. R.

Civ. P. 11(c)(1). "[T]he primary purpose of sanctions against counsel is not to compensate the prevailing party, but to deter future litigation abuse." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002) (internal quotation omitted). The decision to impose sanctions under Rule 11 is left to the sound discretion of the court, based on its familiarity with the issues and litigants. Brubaker, 943 F.2d at 1374.

### III. ANALYSIS

Here, Plaintiff's counsel did not adequately investigate the new factual allegations before filing the Amended Complaint. As a result, the factual claims lacked evidentiary support. And based on the procedural history, counsel knew those facts were critical to any legal claim that NSU violated Title VII. His explanation—that the statements resulted from his "misinterpretation" of his client's complaints—is undermined by the procedural history and the emphasis the court placed on defects in the original Complaint. Noting its "threadbare" factual allegations, the court specifically warned Plaintiff and her counsel that it was not possible to determine "the basis for the alleged discrimination" she described. Mem. Order (ECF No. 13, at 7). Thus, the main purpose of amendment was to correct this known deficiency by specifying the nature of the discrimination, including facts sufficient to plausibly state a claim for relief under Title VII.

It may be that Plaintiff herself was unaware of the specific contours of Title VII's protection. As such, she may have believed that her general perception of discrimination—which she attributed to her social class—would constitute grounds for relief. But her attorney is bound to investigate both the factual and legal merit of her claims. Brubaker, 943 F. 2d at 1373 ("The language of Rule 11 requires that an attorney conduct a reasonable investigation of the factual and legal basis for his [or her] claim before filing.").

Indeed, counsel clearly understood the deficiencies outlined in the court's Dismissal Order, but he attempted to cure them by misrepresenting the facts which could only have been provided by his own client. The Complaint alleged three instances of "similarly situated white employees" treated more favorably than the Plaintiff. In her deposition, Plaintiff testified each of these allegations was false. Plaintiff also expressly disclaimed, no fewer than three times, the central claim added to the Amended Complaint—namely that the discrimination she experienced was on the basis of race. She did not equivocate.

> Q. You never complained to anyone at Norfolk State University about race discrimination?
>
> A. I did not.

Johnson Dep. 228:12-14.

Recognizing that his client's testimony had likely fatally undermined any claim of racial discrimination, her attorney tried

11

to tie her racial claims to her complaints about the school's enforcement of religious exemptions to its head covering policy in the testing center. Plaintiff resisted even this characterization. In a leading exchange with his own client, counsel asked:

> Q. Ms. Johnson, when you complained of ... the discriminatory practice of the form itself to H.R., it was on the basis that you believed they [students] were being targeted on the basis of race as well as religion, correct?
>
> A. Yes. Well, religion mostly.

The form itself, which appears in NSU's memorandum supporting the motion for sanctions is four lines long. Titled simply "Permission to Wear Head Covering," it merely requires that applicants seeking to wear head covering in the testing center "affirm that [their] head covering is worn for religious reasons." Plaintiff produced no evidence that the policy was enforced in a discriminatory fashion against only black students, or even that it disproportionately impacted black students.[3] But even if there was such evidence of disproportionate impact, that would not address the issue presented in the Motion to Dismiss, which was based on the argument that complaints about the university's interaction with the student population did not amount to a

---

[3] NSU is an HBCU and the policy no doubt affected black students whose religion required them to wear head coverings.

prohibited <u>employment practice</u> and thus were not actionable under Title VII. <u>See</u> Mem. Order (ECF No. 26, at 9).

Finally, counsel's complaint that the false allegations resulted from a simple miscommunication is insufficient to avoid sanctions in light of Rule 11's safe harbor. The "safe harbor" provision requires notice to the offending party and a twenty-one (21) day waiting period prior to the filing of the motion in which a sanction-worthy argument or assertion may be withdrawn or corrected. Fed. R. Civ. P. 11(c)(2). "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." <u>Id.</u>

The purpose of the safe harbor period is "to allow the offending party twenty-one days to withdraw the offending claims and escape sanctions." <u>Navy Fed. Credit Union v. LTD Fin. Servs., L.P.</u>, No. 1:18cv1424, 2019 LEXIS 85901, 2019 WL 2203128, at *9 (E.D. Va. May 3, 2019) (quoting <u>Giganti v. Gen-X Strategies, Inc.</u>, 222 F.R.D. 299, 308-09 (E.D. Va. 2004) (internal quotation omitted). In this case, Plaintiff was served with a safe harbor letter and a proposed motion for sanctions describing the specific

13

conduct that allegedly violated Rule 11. <u>See</u> (ECF No. 36-1, at 1–12). By advising counsel to withdraw the offending pleading before seeking sanctions, NSU gave Plaintiff and her counsel an opportunity to correct any "miscommunication" prior to incurring the further expense of summary judgment briefing and additional litigation. Counsel declined to withdraw or correct the pleading. As a result, counsel's assertion that he simply misunderstood his client's complaints is not an "objectively reasonable" basis to avoid sanction for filing a pleading so clearly lacking in evidentiary support.

## IV. <u>RECOMMENDATION</u>

For the foregoing reasons, this Report RECOMMENDS that the Defendant's Motion for Sanctions under Rule 11 (ECF No. 35) be GRANTED, and that the Court fix a schedule for Defendant to submit an itemized request for the reasonable attorney's fees NSU incurred in completing the briefing on its Motion for Summary Judgment, after providing its safe harbor notice. Plaintiff should thereafter be directed to file a brief within 14 days of Defendant's filing addressing the reasonableness of the fees, or any other basis to avoid or determine the appropriate monetary sanction.[4]

---

[4] NSU's sanctions motion also sought dismissal of the action with prejudice. However, a final order of the court on its Motion for Summary Judgment would obviate the need for dismissal and leave Plaintiff's conduct unremedied absent the monetary sanction described.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER,
UNITED STATES MAGISTRATE JUDGE

December 12, 2023